UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **FRED CLOUD,** | ) | **CASE NO. 1:03CR486** |
| | ) | **1:07CV3704** |
| | ) | |
| Petitioner, | ) | **JUDGE JOHN R. ADAMS** |
| | ) | |
| v. | ) | |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Respondent. | ) | |
| | ) | |

The instant matter is before the Court upon Petitioner Fred Cloud's ("Petitioner") Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody, pursuant to 28 U.S.C. § 2255. Doc. 505.

## I. FACTUAL BACKGROUND

Petitioner, along with codefendants Calvin Caver and Tamir Abdullah, was charged by a Grand Jury of the United States District Court for the Northern District of Ohio on July 20, 2004, in a four-count superseding indictment. Doc. 301. The superseding indictment charged Petitioner with one count of Conspiracy to Possess with Intent to Distribute Cocaine Base, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A). Doc. 301. Following a jury trial, Petitioner was found guilty on September 22, 2004. Doc. 366.

On March 2, 2005, the Court sentenced Petitioner to 360 months imprisonment on his conviction. Docs. 445, 446. Petitioner timely filed a notice of appeal on March 10, 2005. Doc. 451.

The Sixth Circuit affirmed Petitioner's conviction, along with those of his codefendants, in a mandate issued January 3, 2007. Doc. 497. Petitioner filed the instant petition for federal

habeas corpus relief on December 3, 2007. Doc. 505. After numerous agreed upon extensions, the government has filed a Response in Opposition, (Doc. 628), Petitioner has filed a Brief in Response, (Doc. 663), and the Government has filed a sur-reply (Doc. 684).

## II. STANDARD OF REVIEW

"To prevail under 28 U.S.C. § 2255, a defendant must show a 'fundamental defect' in the proceedings which necessarily results in a complete miscarriage of justice or an egregious error violative of due process." *Gall v. United States*, 21 F.3d 107, 109 (6th Cir. 1994). A federal district court may grant relief to a prisoner in custody only if the petitioner can "demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea or the jury's verdict." *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003).

## III. LAW AND ARGUMENT

### *Government Suppression of Impeachment Evidence*

The Supreme Court's holding in *Brady v. Maryland*, 373 U.S. 83 (1963), "obligates the government to turn over evidence that is both favorable to the accused and material to guilt or punishment." *Owens v. Guida*, 549 F.3d 399, 415 (6th Cir. 2008). Evidence that may be used to impeach a government witness falls within the *Brady* rule "[w]hen the reliability of a given witness may well be determinative of guilt or innocence." *Giglio v. United States*, 405 U.S. 150, 154 (1972) (citations omitted). A *Brady* violation has three components: "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). Only where "the [withheld] evidence is material in the sense that its suppression undermines confidence in

the outcome of the trial" does a *Brady* violation result in a constitutional error. *United States v. Bagley*, 473 U.S. 667, 678 (1985).

Petitioner alleges that the government failed to disclose evidence of misconduct by Drug Enforcement Administration Special Agent Lee Lucas ("Agent Lucas"), which Petitioner claims would have been used to impeach Agent Lucas at trial. Specifically, Petitioner cites two cases from the Southern District of Florida in which Agent Lucas' credibility was found lacking. *See United States v. Novaton*, 271 F.3d 968 (11th Cir. 2001); *United States v. Von Schlieffen*, Case No. 93-0187 (S.D. Fla. May 28, 2003). As the government points out, both of these cases are publicly filed documents that were readily available to Petitioner. Where evidence is available from a source other than the government, there is no *Brady* violation "because in such cases there is really nothing for the government to disclose." *Coe v. Bell*, 161 F.3d 320, 344 (6th Cir. 1998). Petitioner states that he was aware of alleged inaccuracies in the testimony of Agent Lucas, as well as that of Michael Morris, which, if true, should have led him to question the credibility of those witnesses and attempt to find evidence to impeach them. The government's failure to provide Petitioner with evidence that was publicly available to him does not constitute a *Brady* violation.

Petitioner also relies heavily upon a hearing conducted by a colleague on this Court based upon a motion for a new trial in *United States v. Henderson*, 1:07CR68 (N.D.Ohio). In so doing, Petitioner relies almost exclusively upon a memorandum prepared by F.B.I. Special Agent Dean Winslow.

Initially, the Court agrees with the Government. With respect to the memorandum itself, Petitioner has made no showing that it was ever in the possession of any person with the U.S. Attorney's office or any person in any agency that participated in the investigation or prosecution

3

of Petitioner. The memorandum itself, therefore, cannot constitute *Brady* material. As the Seventh Circuit has noted, no case law exists that "can be read as imposing a duty on the prosecutor's office to learn of information possessed by other government agencies that have no involvement in the investigation or prosecution at issue." *United States v. Morris*, 80 F.3d 1151, 1169 (7th Cir. 1996). This is true because "there is federal law supporting the opposite proposition-that *Brady* and its prodigy do not 'impos[e] a duty on the prosecutor's office to learn of information possessed by other government agencies that have no involvement in the investigation or prosecution at issue.' *Goff v. Bagley*, 601 F.3d 445, 476 (6th Cir. 2010) (citing *Morris*, 80 F.3d at 1169).

However, Petitioner also contends that the Winslow memorandum establishes that members of the U.S. Attorney's Office had specific concerns over Agent Lucas's credibility and believed that he had lied in connection with prior cases. However, every U.S. Attorney present for the meeting at which these statements allegedly occurred testified at the new trial hearing in *Henderson*. All testified consistently that no such statements were ever made to Agent Winslow. Further, all testified that they never held such beliefs about Agent Lucas. Ultimately, Agent Winslow conceded during his own testimony that he had simply made a presumption based on his own knowledge rather than on any statement by a member of the U.S. Attorney's office. Case. No. 1:07CR68, Doc. 387 at 260-261. Accordingly, there exists no evidence before this Court to suggest the U.S. Attorney's office or the agencies investigating and prosecuting Petitioner held any of these opinions at the time of the prosecution or prior to that prosecution.[1] This aspect of the *Brady* claim, therefore, fails.

---

[1] This evidence similarly compels rejection of Petitioner's argument that ethical obligations extending beyond *Brady* compelled the disclosure of these now known to be non-existent opinions.

Petitioner also takes issue with an opinion that was authored by Judge Economus in which he expressed doubts about Agent Lucas' credibility. Following an *ex parte* communication with the Government (that was approved by defense counsel), Judge Economus then revised his order to omit any reference to his belief that Agent Lucas had concocted some story rather than remembered certain facts. Again, however, this Court decision was public and therefore readily available to Petitioner and his counsel. As such, it does not constitute *Brady* material.

Additionally, the Government has entirely refuted Petitioner's claim that its efforts to correct the prior order were some underhanded mechanism for suppressing *Brady* material. Rather, the *sole* evidence before this Court demonstrates that the Government approached Judge Economus because it had more knowledge on the issue and wished to correct a factual inaccuracy. Accordingly, Petitioner has failed to demonstrate a *Brady* violation on this claim as well.

The remainder of Petitioner's argument on this issue seems to focus upon opinions held by Assistant U.S. Attorneys that had characterized Agent Lucas's work as sloppy or incomplete. However, there is simply no law or argument that would suggest that these opinions somehow constitute *Brady* material. This ground for relief lacks merit.

*Ineffective Assistance of Counsel*

In Grounds Two and Three of the instant petition, Petitioner offers numerous bases upon which he claims his counsel was ineffective, either at trial or on appeal.

The Supreme Court, in *Strickland v. Washington*, 466 U.S. 668 (1984), devised a two-part inquiry for claims of ineffective assistance of counsel. Under the *Strickland* test, Petitioner must show (1) that counsel's representation fell below an objective standard of reasonableness;

and (2) that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 688-94. Thus, Petitioner must demonstrate both deficient performance and prejudice in order to succeed on his claim. *Id.* at 686. In analyzing a claim of ineffective assistance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.

### 1. Objection to Indictment

Petitioner claims that his trial counsel was ineffective in failing to object to a "vague indictment." Petitioner essentially argues that he could not possibly defend the matter effectively. The Court again agrees with the Government that Petitioner is arguing that he was entitled to have overt acts pled in support of the conspiracy charge. The Sixth Circuit, however, has expressly concluded that an overt act need not be charged or proven to support a drug conspiracy conviction under 12 U.S.C. § 846. *See United States v. Dempsey,* 733 F.2d 392, 395-96 (6th Cir. 1984). Accordingly, the Court finds no deficient performance by Petitioner's trial counsel with respect to this issue.

### 2. Conflict of Interest

Petitioner's claim on this issue borders on frivolous. An assistant U.S. Attorney, Bruce Khula, wrote the Government's reply brief in Petitioner's appeal. Subsequently, while the appeal remained pending, Khula accepted a position at the same law firm as Petitioner's appellate counsel. Khula performed no work on the appeal upon leaving his government employment. Moreover, his affidavit makes clear that he had no contact whatsoever with Petitioner's appellate counsel. Accordingly, no conceivable conflict existed, let alone an actual conflict that affected Petitioner's appeal.

*Bruton Violation*

Petitioner also contends that his rights were violated when a non-testifying co-defendant's letters were admitted into evidence. Specifically, Petitioner takes issue with a letter written by Caver that Petitioner believes "sounded to the jury like an admission by Mr. Caver suggesting that he was guilty. Doc. 663 at 26. *Bruton* "held that a defendant is deprived of his rights under the Confrontation Clause when his nontestifying codefendant's confession naming him as a participant in the crime is introduced at their joint trial, even if the jury is instructed to consider that confession only against the codefendant." *Richardson v. Marsh*, 481 U.S. 200, 201-02 (1987). However, the *Bruton* rule is inapplicable here. First, the statement was not facially incriminating, as required under *Marsh*. *Id.* at 208-09. Moreover, even if it were, the statement does not incriminate Petitioner in any manner. Accordingly, he has shown no violation.

*Prosecutorial Misconduct – Subornation of Perjury, Witness Coercion*

"Government misconduct that amounts to substantial interference with a witness's free and unhampered determination to testify may be deemed a violation of due process." *United States v. Foster*, 128 F.3d 949, 953 (6th Cir. 1997). Nevertheless, "[i]n carrying out his legitimate business it has always been properly within the prosecutor's prerogatives to offer [promises of leniency or of dismissal or reduction of charges] in return for a benefit to the government, often in the form of the defendant's cooperation." *United States v. Ware*, 161 F.3d 414, 419-20 (6th Cir. 1998). In failing to specify which witnesses were allegedly coerced, Petitioner has not demonstrated that the government acted outside the permissible bounds of its power to elicit cooperation from any witness.

7

To succeed on a claim for prosecutorial misconduct based upon subornation of perjury, Petitioner "must show (1) the statement was actually false; (2) the statement was material; and (3) the prosecution knew it was false." *United States v. Lochmondy*, 890 F.2d 817, 822 (6th Cir. 1989). Petitioner has failed to meet this burden.

Petitioner details at length his belief that certain proffers by co-defendants did not implicate him, but that trial testimony then did implicate him. Petitioner surmises that these changed stories must have been a result of coercion through threats of lengthy sentences or outright perjury. Petitioner offers no evidence in support of his conclusion, only supposition. Moreover, Petitioner has offered no evidence to support any allegation that any of these witnesses gave false testimony.

The sole evidence offered by Petitioner appears to be an affidavit from co-defendant Ralph Jones. Jones asserts that he gave false testimony against *Caver* that was "coerced by the offer from the AUSA ALONG with instructions from [his] attorney." Doc. 672-6 at 1. Jones does not identify his alleged false testimony. Moreover, he does not identify how he was coerced. More importantly, as with the above assertions, there is no evidence whatsoever that the Government was aware of any false testimony or somehow sought to introduce false testimony. This claim also fails.

### *Admission of Letters*

Petitioner also contends that his right to a fair trial was violated by the admission of letters he wrote to co-defendants. The Sixth Circuit found no prejudicial error in the admission of these letters. *Caver*, 470 F.3d at 242043. Accordingly, Petitioner cannot demonstrate his right to a fair trial was denied by virtue of their admission.

### *Insufficient Evidence*

8

Ground Seven of the petition alleges that Petitioner's conviction was based upon insufficient evidence. Doc. 505 at 6. The Sixth Circuit has repeatedly held that "the sufficiency of the evidence to support a conviction may not be collaterally reviewed on a Section 2255 proceeding." *United States v. Osborn*, 415 F.2d 1021, 1024 (6th Cir. 1969) (en banc). Such claims may only be raised on direct appeal. *Id.*

On direct appeal, Petitioner challenged the sufficiency of the evidence with respect to his involvement in the conspiracy. The Sixth Circuit rejected the claim, finding that substantial evidence existed to show that Petitioner was a participant in the drug conspiracy. *Caver*, 470 F.3d at 234. Petitioner has provided no basis for this Court to find differently on the issue, nor any legal authority that would somehow permit this Court to reach a conclusion in tension with the Sixth Circuit.

### *Composition of the Jury Pool*

Ground Eight of the petition argues that the "conviction was obtained as a result of an unconstitutionally selected and/or impaneled [sic] petit jury." Doc 505 at 6. Petitioner concedes in his reply that this claim cannot be supported.

### *Reasonableness of Sentence*

Again, Petitioner raised a challenge to the reasonableness of his sentence on direct appeal. His challenge was found to lack merit. *Caver*, 470 F.3d at 247-250. In this matter, Petitioner appears to argue that since there have been retroactive amendments to the crack sentencing guidelines, his sentence has somehow become unreasonable. Again, Petitioner has offered no legal authority to suggest that this Court can revisit an issue resolved by the Sixth Circuit. Moreover, in any event, the Court would not find Petitioner's sentence unreasonable.

*Request for an Evidentiary Hearing*

In a § 2255 proceeding, "[a]n evidentiary hearing is required unless 'the record conclusively shows that the petitioner is entitled to no relief.'" *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999) (quoting *Blanton v. United States*, 94 F.3d 227, 235 (6th Cir. 1996)).  As demonstrated above, the record in the instant matter clearly demonstrates that Petitioner is not entitled to relief.  Therefore, no evidentiary hearing is necessary.

*Summary*

The Court would note that Petitioner's briefing in this matter does not closely follow his petition and its grounds for relief.  Numerous arguments are strewn throughout the briefing, often not tied to a particular ground for relief.  The Court, however, has fully reviewed all of the briefing in this matter and every piece of evidentiary material submitted in support.  To the extent not expressly discussed above, any remaining arguments raised by Petitioner are hereby rejected.  There are no meritorious arguments within the petition or supporting briefs.

## IV. CONCLUSION

For the foregoing reasons, Petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody is hereby **DENIED**.  (Doc. 505).

Furthermore, the Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith, and that there is no basis upon which to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

**IT IS SO ORDERED.**

Dated: April 12, 2012           /**s**/ ***John R. Adams***
                                **JOHN R. ADAMS**
                                **UNITED STATES DISTRICT JUDGE**